**SEYFARTH SHAW LLP**
Jon D. Meer (SBN 144389)
jmeer@seyfarth.com
Leo Q. Li (SBN 293539)
lli@seyfarth.com
Sofya Perelshteyn (SBN 320931)
sperelshteyn@seyfarth.com
Justin J. Jackson (SBN 333687)
jujackson@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendant
ULTA SALON, COSMETICS & FRAGRANCE, INC.

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIA ARELLANO, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.; and DOES 1 to 100, inclusive,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No.<br><br>**DEFENDANT ULTA'S NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT**<br><br>[San Bernardino County Superior Court Case No. CIV SB 2202356]<br><br>Complaint Filed: February 1, 2022<br>Trial Date:       None Set |

81226164v.2

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Defendant") files this Notice of Removal, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California for the County of San Bernardino, to the United States District Court for the Central District of California.  This Court has original jurisdiction over the action pursuant to CAFA for the following reasons:

## I.    BACKGROUND

1.     On February 1, 2022, Plaintiff Katia Arellano ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of San Bernardino, entitled "*KATIA ARELLANO, on behalf of herself and others similarly situated, v. ULTA SALON, COSMETICS & FRAGRANCE, INC., and DOES 1 to 100, inclusive,*" Case No. CIV SB 2202356 ("Complaint").  The Complaint asserts nine causes of action for (1) Failure to Pay Wages for All Hours Worked At Minimum Wage in Violation of California Labor Code §§ 1194 and 1197; (2) Failure to Pay Overtime Wages for Daily Overtime Worked in Violation of California Labor Code §§ 510 and 1194; (3) Failure to Authorize or Permit Meal Periods in Violation of California Labor Code §§ 512 and 226.7; (4) Failure to Authorize or Permit Rest Periods in Violation of California Labor Code § 226.7; (5) Failure to Indemnify Employees for Employment-Related Losses/Expenditures in Violation of California Labor Code § 204; (6) Failure to Timely Pay Earned Wages During Employment in Violation of California Labor Code § 204; (7) Failure to Provide Complete and Accurate Wage Statements in Violation of California Labor Code § 226; (8) Failure to Timely Pay All Earned Wages and Final Paychecks Due at Time of Separation of Employment in Violation of California Labor Code §§ 201, 202,

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2

and 203; and (9) Unfair Business Practices in Violation of Business and Professions Code §§ 17200, *et seq*.

2.      On March 11, 2022, Defendant received, by and through its undersigned counsel of record, a packet containing the Notice and Acknowledgement of Receipt; Summons; Complaint; Civil Case Cover Sheet; Notice of Case Assignment; Notice of Acknowledgement of Receipt; and the Alternative Dispute Resolution Information Package.  A true and correct copy of the packet received by Defendant is attached hereto as **Exhibit A**.

3.      On March 17, 2022, Defendant, by and through its undersigned counsel of record, received the San Bernardino Superior Court's Initial Case Management Conference Order and Complex Guidelines.  A true and correct copy of the San Bernardino Superior Court's Initial Case Management Conference Order and Complex Guidelines is attached hereto as **Exhibit B**.

4.      On April 1, 2022, Defendant, by and through its undersigned counsel of record, served its Notice and Acknowledgement of Receipt of the Complaint.  A true and correct copy of the Notice and Acknowledgment of Receipt of the Complaint is attached hereto as **Exhibit C**.

5.      Defendant has not filed or received any other pleadings or papers, other than the pleadings and papers described as Exhibits A-C, in this action prior to filing this Notice of Removal.

## II.    TIMELINESS OF REMOVAL

6.      Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons—"The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . ."  28 U.S.C. §1446(b)(1).

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2

7.      The service of process which triggers the 30-day period to remove is governed by state law.  *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law."); *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

8.      When a defendant accepts service by notice and acknowledgement of receipt of the complaint, the 30-day period to remove is not triggered until a defendant executes and returns the acknowledgement of service.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (removal period is not triggered "by mere receipt of the complaint unattended by any formal service"); *Langston v. 20/20 Companies, Inc.*, 2014 WL 5335734, at *3 (C.D. Cal. Oct. 17, 2014) ("[S]ervice by mail is not complete until the recipient signs the acknowledgement of receipt and thereafter returns it to the sender … California courts have clarified that [Cal. Code Civ. Proc. § 415.30] 'expressly predicates the efficacy of such service upon the execution and return of an acknowledgment of service….'") (quoting *Thierfeldt v. Marin Hosp. Dist.*, 35 Cal. App. 3d 186, 199 (1973)).

9.      Here, service of the Complaint was deemed complete on April 1, 2022, when Defendant executed and returned the acknowledgement of service of the Complaint.  (*See* Ex. C—Notice and Acknowledgement of Receipt of the Complaint.) Defendant's Notice of Removal is timely because Defendant filed this Notice on April 13, 2022, which is within 30 days of service of the Complaint on April 1, 2022.

## III.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

10.     Under the CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the amount in controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v. Owens* ("*Dart*"), 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2),

(5)(B)).  As set forth below, each of these three requirements are met and thus this action is properly removable, pursuant to 28 U.S.C. § 1441(a).

### A.    The Class Action Includes Approximately 21,340 Potential Class Members

11.    A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

12.    Here, Plaintiff defined the proposed class to include "[a]ll current and formerly hourly non-exempt employees employed by Defendants in California at any time from four (4) years prior to the filing of the initial Complaint…."  (Ex. A— Plaintiff's Complaint, ¶ 53(A)-(I).)  Based on the filing date of the Complaint on February 1, 2022, the proposed class period covers the time period of **February 1, 2018 to the present**.

13.    Based on the proposed class definition, **there are approximately 21,340 current and former non-exempt employees in the proposed class**.  (Declaration of Devon Byrne in Support of Defendant's Notice of Removal ("Byrne Decl."), ¶ 11.) Thus, there is no question that the size of the proposed class far exceeds the minimum threshold of 100 members under CAFA.

### B.    Plaintiff And Defendant Are Minimally Diverse

14.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction—that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A) ("[A]ny member of a class of plaintiffs is a citizen of a State different from any defendant.").

15.    A party's citizenship is determined at the time the lawsuit was filed.  *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

4

DEFENDANT ULTA'S NOTICE OF REMOVAL

16.     In the instant case, Plaintiff is a citizen of a state (California) that is different from the states of citizenship of Defendant (Delaware and Illinois).

### 1.     Plaintiff Is A Citizen Of California

17.     For diversity purposes, a natural person's state citizenship is determined by that person's domicile—*i.e.*, one's "permanent home, where [that person] resides with the intention to remain or to which [that person] intends to return." *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed").

18.     In this case, "the currently named Plaintiff is and was a resident of California and was employed by Defendants in the State of California within the four (4) years prior to the filing of this Complaint." (Ex. A—Complaint, ¶ 3.)

19.     Additionally, Plaintiff provided Defendant with her home address during the course of her employment for purposes of her personnel file, payroll checks, and tax withholdings.  (Byrne Decl., ¶ 6.)  Defendant's review of Plaintiff's personnel file reveals that Plaintiff resides in Redlands, California.  (*Id.*)

20.     Plaintiff's intent to remain domiciled in California also is evident from the fact that she brought this lawsuit against Defendant in the Superior Court of the State of California for the County of San Bernardino.  Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

### 2.     Defendant Is Not A Citizen Of California

21.     Defendant is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. § 1332(c)(1).

22.     For diversity purposes, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2

23.     Defendant is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware.  (Byrne Decl., ¶ 7.)  Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Delaware.

24.     Further, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of Illinois.  (Byrne Decl., ¶ 8.)  Thus, for purposes of diversity jurisdiction, Defendant is also a citizen of Illinois.

25.     The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010).  Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis.  *Id*. at 92–93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092–93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

26.     Under the "nerve center" test, Illinois emerges as Defendant's principal place of business.  Defendant's corporate headquarters are located in Bolingbrook, Illinois where Defendant's high-level officers direct, control, and coordinate its activities.  (Byrne Decl., ¶ 8.)  Defendant's high-level corporate officers maintain offices in Bolingbrook, and many of Defendant's corporate-level functions are performed in the Bolingbrook office.  (*Id.*)  Additionally, many of Defendant's executive and administrative functions, including corporate finance and accounting, are directed from the Bolingbrook headquarters.  (*Id.*)

27.     Therefore, for purposes of diversity of citizenship, Defendant is, and has been at all times since this action commenced, a citizen of the State of Delaware and the State of Illinois.  28 U.S.C. § 1332(c)(1).

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2

28.     Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Illinois, minimal diversity exists for purposes of CAFA.

### 3.     The Citizenship Of Doe Defendants Should Be Disregarded

29.     The other defendants named in the Complaint are merely fictitious parties identified as "DOES 1 to 100" whose citizenship shall be disregarded for purposes of this removal.  28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."); *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) ("[T]he unknown defendants sued as 'Does' need not be joined in a removal petition.") (citing *Ronson Art Metal Works, Inc. v. Hilton Lite Corp.*, 111 F.Supp. 691, 694 (N.D. Cal. 1953)).

30.     Thus, the existence of "DOES 1 to 100" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 n.4 (9th Cir. 2006) (rule applied in CAFA removal; "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

### C.     The Amount In Controversy Is More Than $50 Million, Which Exceeds The $5 Million Statutory Threshold Under CAFA

31.     CAFA requires that the amount in controversy exceed $5 million, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000…." 28 U.S.C. § 1332(d)(6).

32.     In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary

Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.

33.    The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42–43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

34.    Here, even if the Complaint does not allege an amount in controversy, the removing defendant only needs to prove by a **preponderance of the evidence** that the amount in controversy exceeds that minimum. *Ramos v. MOOG Inc.*, 2020 WL 969023, at \*3 (C.D. Cal. Feb. 27, 2020) (applying preponderance of evidence standard to deny motion to remand where plaintiff's class action complaint makes conclusory allegation that the "aggregate claim is under five million dollars"); *see also Dart*, 135 S. Ct. at 553–54 ("Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the jurisdictional threshold") (emphasis added, internal alterations omitted); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *accord Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged.  In light of *Standard Fire*, this

8

81226164v.2

rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million.") (citations omitted); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that under the "preponderance of the evidence" standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

35.     To satisfy this standard, the "defendants' notice of removal need include **only a plausible allegation** that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (emphasis added); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount'") (emphasis added).

36.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages."  *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

37.     For purposes of ascertaining the amount in controversy, "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

9

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2

38.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

39.     If a plaintiff asserts statutory violations, **the court must assume that the violation rate is 100%** unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to **all** putative class members reasonable.") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that

Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

40.     Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of

11

DEFENDANT ULTA'S NOTICE OF REMOVAL

'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

41.    Plaintiff seeks to recover, on behalf of herself and the alleged class, unpaid wages and penalties for Defendant's alleged failure to pay overtime wages, failure to provide meal and rest breaks, failure to provide meal and rest break premium pay, failure to provide accurate and complete itemized wage statements, failure to pay all wages timely, unreimbursed business expenses, failure to pay all wages upon termination, and unfair business practices. (Ex. A—Complaint ¶¶ 1, 16, 23, 29, 35, 40, 43, 50, and 52.) Plaintiff also seeks attorneys' fees and costs. (Ex. A—Complaint, Prayer for Relief.)

42.    As set forth below, the alleged amount in controversy, implicated by the classwide allegations, exceeds **$50 million**, even under very conservative violation rates. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and solely for purposes of this Notice of Removal, that liability is established.

    **1.    The First Cause Of Action For Unpaid Minimum Wages: The Amount in Controversy Exceeds $1,369,869 Based On Only Five Minutes Of Unpaid Minimum Wages Per Employee Per Week**

43.    For Plaintiff's First Cause of Action, she alleges "Defendants failed to pay Plaintiff and similarly situated employees all wages at the applicable minimum wage for all hours worked due to Defendants' policies, practices and/or procedures…." (Ex. A—Complaint, ¶ 15.) Specifically, Plaintiff alleges Defendant "employed policies, practices, and/or procedures … [and] require[ed] Plaintiff and similarly situated employees to clock

DEFENDANT ULTA'S NOTICE OF REMOVAL

in for their shift and then wait at the timeclock to ensure that [the] system processed the punch in, which could take up to **three minutes**."  (Ex. A—Complaint, ¶ 15(a)) (emphasis added).

44.    Plaintiff further alleges that she and other employees worked off the clock because they had to "wait at the front of the store for all employees to clock out, undergo a security bag check, wait for all other employees to undergo the security bag check, and then wait for the closing shift manager to arm the alarm system and lock the store doors." (Ex. A—Complaint, ¶ 15(b).)  Plaintiff further alleges that she and other employees worked off the clock for "temperature checks and/or medical questionnaires" and they had to  "approve [] their timesheet every other Friday between pay periods after clocking out of their scheduled shifts … which could take up to **twenty minutes**." (Ex. A—Complaint, ¶ 15(c)-(d)) (emphasis added).

45.    Plaintiff further alleges that she and other employees had "to check application Work Jam **daily** for schedule changes while off-the-clock, which would take up to **fifteen minutes**."  (Ex. A—Complaint, ¶ 15(e)) (emphasis added).

46.    As a result of Plaintiff's allegations, Plaintiff seeks "to recover unpaid minimum wage[s], interest thereon, liquidated damages in the amount of their unpaid minimum wage[s], and attorneys' fees and costs" on behalf of herself "and the Minimum Wage Class." (Ex. A—Complaint, ¶ 61.)

47.    Based on Plaintiff's allegations, she and potential class members were subject to "daily" off-the-clock work.  (*See* Ex. A—Complaint, ¶ 15(e)) (employees had "to check application Work Jam **daily** for schedule changes while off-the-clock, which would take up to **fifteen minutes**.") (emphasis added).

48.    Plaintiff alleges that she and other employees were subject to more than **38 minutes** of off-the-clock work each pay period: 20 minutes for approving timesheets every other Friday; 15 minutes for checking the Work Jam application each shift; and three minutes for waiting for the timeclock system to process their punches.  (*See* Ex. A—Complaint, ¶¶ 15(a)-(e).)  However, Defendant conservatively estimates that each

13

potential class member worked off the clock for only **one minute each day**, which means each employee would incur five minutes of off-the-clock work for each five-day workweek.

49. The "Minimum Wage Class" includes "[a]ll current and formerly hourly non-exempt employees employed by Defendants in California at any time from four (4) years prior to the filing of the initial Complaint…." (Ex. A—Complaint, ¶ 53(A).) Accordingly, the proposed class period for the First Cause of Action is from **February 1, 2018 until the present**.

50. Defendant pays its non-exempt employees every two weeks. (Byrne Decl., ¶ 10.) Accordingly, there are 26 pay periods per year. During the proposed class period, the potential class members worked a total of approximately 1,027,402 workweeks, or approximately 513,701 pay periods (1,027,402 / 2). (*Id.* at ¶ 11.) Plaintiff Arellano's average hourly rate was $16 per hour, and is the hourly rate used for all calculations in this Notice of Removal. (*Id.* at ¶ 10.)

51. Accordingly, a reasonable estimate of the amount in controversy for Plaintiff's unpaid minimum wages claim, at five minutes of unpaid minimum wages each week, is **$1,369,869** [($16 per hour / 12 (five minutes per week) x 1,027,402 workweeks)]. Although Defendant denies Plaintiff's allegations, these are very conservative estimations for purposes of calculating the amount in controversy under CAFA removal, given that Plaintiff alleges **more than 38 minutes** of off-the-clock work each pay period. Indeed, the Ninth Circuit and numerous district courts have held, an estimate of at least 30 minutes per class member per week (*i.e.*, six times Defendant's assumption) is appropriate in light of Plaintiff's allegations. *See, e.g.*, *Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week. This assumption is reasonable in light of the Complaint, whose allegations lack specificity"); *Wheatley*, 2019 WL 688209, at *5 (C.D.

DEFENDANT ULTA'S NOTICE OF REMOVAL

Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

### 2. The Third Cause Of Action For Alleged Meal Period Violations: The Amount In Controversy Exceeds $8,219,216 Based On Only One Hour Of Premium Pay Per Employee Per Pay Period

52. For Plaintiff's Third Cause of Action, she alleges "Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit meal periods to Plaintiff and similarly situated employees of no less than thirty (30) minutes for each five-hour period of work as required by law."  (Ex. A—Complaint, ¶ 26.)  Plaintiff contends she and "similarly situated employees worked shifts long enough to entitle them to meal periods under California law."  (*Id*.)

53. According to the Complaint, employees were not "permitted to leave the premises for meal periods" and had to "undergo security bag checks," which interfered with their meal periods. (Ex. A—Complaint, ¶ 26(a).)  Plaintiff further alleges that employees had "to keep their walkie talkies on their person at all times during their meal periods, resulting in meal periods that were not duty-free and/or less than thirty (30) minutes.  (Ex. A—Complaint, ¶ 26(b).)  Plaintiff further alleges that Defendant failed to

pay employees at their "regular rate of compensation for the purpose of paying meal period premium wages."  (Ex. A—Complaint, ¶ 28.)

54.     As a result of Plaintiff's allegations, she seeks to recover "one (1) hour of additional pay at the regular rate of compensation for each workday…."  (Ex. A—Complaint, ¶ 81.)

55.     California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."  Cal. Lab. Code § 512.  Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

56.     The statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code § 17200, *et seq. See Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Accordingly, the proposed class period for the Third Cause of Action is from **February 1, 2018 until the present**.

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2

57.     As stated above, during the proposed class period, the potential class members worked a total of approximately 1,027,402 workweeks, or approximately 513,701 pay periods (1,027,402 / 2).  (*Id.* at ¶ 11.)

58.     Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per pay period for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$8,219,216** ($16/hour x 513,701 pay periods).

59.     Defendant's estimate is very conservative.  Defendant assumes only one meal period violation for each two-week pay period, per employee, even though Plaintiff alleges employees had a meal period violation for each shift over five hours.  (*See* Ex. A—Complaint, ¶ 26) ("Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit meal periods to Plaintiff and similarly situated employees of no less than thirty (30) minutes for **each** five-hour period of work as required by law.")  (emphasis added).  In other words, if an employee worked 10 days during a two-week pay period, Defendant has calculated only a single meal period violation during that pay period.

### 3.     The Fourth Cause Of Action For Alleged Rest Period Violations: The Amount In Controversy Exceeds $8,219,216 Based On Only One Hour Of Premium Pay Per Employee Per Pay Period

60.     For Plaintiff's Fourth Cause of Action, she alleges "Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit all legally required and/or compliant rest periods to Plaintiff and similarly situated employees." (Ex. A—Complaint, ¶ 32.)  Plaintiff contends employees "regularly worked shifts of more than three-and-a-half (3.5) hours," so employees were regularly eligible for rest periods.  (*Id.*)  Plaintiff contends Defendant "fail[ed] to authorize or permit Plaintiff and similarly situated employees an uninterrupted duty-free rest period of no less than ten (10) minutes for each four-hour period of work as required by law."  (Ex. A—Complaint, ¶ 32(a).)

DEFENDANT ULTA'S NOTICE OF REMOVAL

61.     According to the Complaint, employees were not "permitted to leave the premises for meal rest periods" and had to "undergo security bag checks," which interfered with their rest periods.  (Ex. A—Complaint, ¶ 32(b).)  Plaintiff further alleges that employees had "to keep their walkie talkies on their person at all times during their rest periods, resulting in rest periods that were not duty-free and/or less than thirty (10) minutes.  (Ex. A—Complaint, ¶ 32(c).)  Plaintiff further alleges that Defendant failed to pay employees at their "regular rate of compensation for the purpose of paying rest period premium wages."  (Ex. A—Complaint, ¶¶ 32(d), 34.)

62.     As a result, Plaintiff seeks "one (1) hour of pay at their regular rate of pay for each workday they did not receive all legally required and legally compliant rest periods." (Ex. A—Complaint, ¶ 87.)

63.     Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which . . . shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012).  California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely rest periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon*, 2010 WL 1753194 at *4.

64.     The statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years.  *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code § 17200, *et seq*.  *See Falk*, 237 Cal. App. 4th at 1462, n.12.  Accordingly, the proposed class period for the Fourth Cause of Action is from **February 1, 2018 until the present**.

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2

65.     Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per pay period for the alleged non-provision of rest periods, the amount in controversy on this claim would equal no less than **$8,219,216** ($16/hour x 513,701 pay periods).

66.     Defendant's estimate is very conservative.  Defendant assumes only one rest period violation during each two-week pay period, per employee, even though Plaintiff alleges there were violations each shift.  (*See* Ex. A—Complaint, ¶ 32(a) (Defendant "fail[ed] to authorize or permit Plaintiff and similarly situated employees an uninterrupted duty-free rest period of no less than ten (10) minutes for **each** four-hour period of work as required by law") (emphasis added).  In other words, if an employee worked 10 days during a two-week pay period, Defendant has calculated only a single rest period violation during that pay period.

### 4.     The Fifth Cause Of Action For Unreimbursed Business Expenses: The Amount In Controversy Exceeds $711,276

67.     For Plaintiff's Fifth Cause of Action, Plaintiff alleges that "Defendants violated Labor Code § 2802 by employing policies, practices, and/or procedures of impermissibly passing business-related expenses to Plaintiff and Indemnification Class Members during the course of employment."  (Ex. A—Complaint, ¶ 94.)  Plaintiff alleges she and other employees had "to use their personal cell phone (including both telephone use and cellular data use) for work-related purposes—without reimbursing Plaintiff and similarly situated employees for such use."  (Ex. A—Complaint, ¶ 94(a).)  Plaintiff further alleges that "employees were required to download, maintain, and utilize an application called 'Work Jam' on their personal cell phones for work-related purposes."  (*Id*.)

68.     Plaintiff also alleges that "Plaintiff and Indemnification Class Members [had] to use or purchase their own tools and/or resources for their mandatory compliance with Defendants' aforementioned policies, practices, and/or procedures…."  (Ex. A—Complaint, ¶ 95.)

81226164v.2

69.    As a result of these allegations, Plaintiff seeks "to recover full indemnification, reasonable attorneys' fees and costs of suit." (Ex. A—Complaint, ¶ 99.)

70.    Under California law, an employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Labor Code § 2802(a).

71.    The statute of limitations for recovery for unpaid business expenses under California Labor Code § 2802 pay is three years. Cal. Civ. Proc. Code § 338. The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations. *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the Fifth Cause of Action is from **February 1, 2018 until the present**.

72.    During the limitations period of February 1, 2018 to the present, there are approximately 21,340 potential class members, who worked a total of approximately 1,027,402 workweeks. (Byrne Decl., ¶ 11.) That amount of weeks worked equates to approximately 237,092 total months worked (1,027,402 weeks worked x (12 months per year/52 weeks per year)).

73.    Assuming that each potential class member during the limitations period may recover cell phone expenses in the amount of $3 per month, the amount in controversy for the unpaid business expenses would equal no less than **$711,276** ($3 per month x 237,0982 months).

74.    Defendant's estimate is very conservative. For purposes of showing the amount in controversy for alleged failure to reimburse cell phone expenses, there is a wide variety of cell phone plans available, with different promotions, from different providers. According to the U.S. Bureau of Labor Statistics, the average annual cell phone services charge is $1,188, or approximately $99 per month. U.S. Bureau of Labor Statistics, Table 1300, p. 4, *available at* https://www.bls.gov/cex/2018/combined/age.pdf.

Assuming that employees use their cell phones for business purposes for only 3% of the time during each month, their expenses would be approximately $3 per month.

**5.    The Seventh Cause Of Action For Non-Compliant Wage Statements: The Amount In Controversy Exceeds $9,914,800**

75.    For Plaintiff's Seventh Cause of Action, Plaintiff alleges that Defendant "fail[ed] to provide Plaintiff and other similarly situated employees accurate itemized wages statements showing: (1) the hourly rate of pay; (2) the overtime rate of pay; (3) the number of overtime hours worked; and (4) the "Shift Differential" pay."  (Ex. A—Complaint, ¶ 110.)

76.    Plaintiff further alleges, that "[a]s a derivative of Plaintiff's claims above, Plaintiff alleges that Defendants failed to provide accurate wage and hour statements to him [sic] and other similarly situated employees who were subject to Defendants' control for uncompensated time and who did not receive all their earned wages…."  (Ex. A—Complaint, ¶ 115.)

77.    Based on this alleged violation, Plaintiff claims that "Plaintiff and the Wage Statement Class are entitled to recover fifty ($50) dollars per employee for the initial pay period … and one hundred [$100] dollars per employee per violation for each subsequent pay period, not to exceed an aggregate penalty of four thousand ($4,000) dollars per employee."  (Ex. A—Complaint, ¶ 119.)  Plaintiff seeks to recover "the full amount of penalties due under [California Labor Code] § 226(e), reasonable attorneys' fees, and costs of suit."  (Ex. A—Complaint, ¶ 121.)

78.    The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Because Plaintiff filed her Complaint on February 1, 2022, the statutory period for the claim under California Labor Code § 226 runs from **February 1, 2021 to the present**.

79.    During the period of February 1, 2021 to December 22, 2021 there are approximately 8,550 potential class members with 206,846 total weeks worked. (Byrne

Decl., ¶ 13.)  Based on the number of weeks worked, Defendant issued approximately 103,423 wage statements to these employees (206,846 weeks worked / 2).  When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement, the amount in controversy on this claim would equal no less than **$9,914,800** ([$100 x 103,423 pay periods] - [$50 x 8,550 employees]).

### 6. The Eighth Cause Of Action For Waiting Time Penalties: The Amount In Controversy Exceeds $19,200,000

80.     For Plaintiff's Eighth Cause of Action, Plaintiff alleges that "Defendants failed to pay Plaintiff and on information and belief, the Waiting Time Class, with all wages earned and unpaid prior to separation of employment." (Ex. A—Complaint, ¶ 125.)  Plaintiff alleges that Defendant "intentionally adopted policies or practices incompatible with the requirements of Labor Code §§ 201 and 202." (Ex. A—Complaint, ¶ 126.)

81.     Plaintiff further alleges that "Defendants' practices include failing to pay at least minimum wage[s] for all time worked, overtime wages for all overtime hours worked, meal period premium wages, rest period premium wages, shift differential pay, and/or the regular rate of pay." (Ex. A—Complaint, ¶ 126.)

82.     As a result of these allegations, Plaintiff contends that "Plaintiff and the Waiting Time Class are entitled to all wages earned prior to separation of employment that Defendants have yet to pay to them." (Ex. A—Complaint, ¶ 127.)  Plaintiff further contends that "Plaintiff and the Waiting Time Class are entitled to continuation of their wages, from the day their earned and unpaid wages were due until paid, up to a maximum of thirty (30) days." (Ex. A—Complaint, ¶ 128.)  Plaintiff seeks "to recover the full amount of their unpaid wages [and] continuation wages under Labor Code § 203, and interest thereon." (Ex. A—Complaint, ¶ 131.)

83.     Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who

DEFENDANT ULTA'S NOTICE OF REMOVAL

quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days.").

84.     The statute of limitations period for California Labor Code § 203 penalties extends back three years from the date of filing of the complaint, or February 1, 2019. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

85.     Here, during the three-year limitations period, approximately 11,519 potential class members were terminated between February 1, 2019 and the present. (Byrne Decl., ¶ 12.)  Assuming each potential class member is owed eight hours of pay per day for the maximum penalty of 30 days, the alleged amount in controversy for the claim of waiting time penalties would be approximately **$44,232,960** [($16 per hour x 8 hours x 30 days) x 11,519 potential class members].

86.     However, Defendant conservatively limits the amount in controversy to only **5,000 of the 11,519 potential class members** who were terminated during the three-year limitations period.  Assuming 5,000 of the 11,519 potential class members are owed eight hours of pay per day for the maximum penalty of 30 days, the alleged amount in controversy for the claim of waiting time penalties would be approximately **$19,200,000** [($16 per hour x 8 hours x 30 days) x 5,000 potential class members].  This conservative assumption of eight hours a day is reasonable given Plaintiff's allegations that employees are entitled to unpaid wages arising from off-the-clock work each shift.  (*See* Ex. A— Complaint ¶¶15(e)) (employees had "to check application Work Jam **daily** for schedule changes while off-the-clock, which would take up to **fifteen minutes**.") (emphasis added).

23
DEFENDANT ULTA'S NOTICE OF REMOVAL

87.     Indeed, courts hold that the maximum 30-day penalty is reasonable when assessing the amount in controversy for purposes of removal.  *See, e.g.*, *Tajonar v. Echosphere, LLC*, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding defendant's "calculations [we]re reasonable and consistent with [plaintiff's] own allegations" that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations.").

**7.     Attorneys' Fees: The Amount In Controversy Exceeds $2,998,986**

88.     Plaintiff also seeks attorneys' fees.  (*See* Ex. A—Complaint, Prayer for Relief at 40:24-25, 41:9-10, 42:11-12, and 43:7-8; *see also* ¶¶ 61, 73, 99, and 121.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is "mandatory or discretionary"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010–1011 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

89.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010–11; *Muniz*, 2007 WL 1302504 at *2 (attorneys' fees "are also properly considered in ascertaining the amount in controversy" for purposes of removal under CAFA).

90.     The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy

24

DEFENDANT ULTA'S NOTICE OF REMOVAL

requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

91.    Indeed, the Ninth Circuit recently and explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," and "appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

92.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78–84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of

25

DEFENDANT ULTA'S NOTICE OF REMOVAL

42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at \*16–18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

93.    Plaintiff seeks to recover attorneys' fees for the First, Fifth, and Seventh Causes of Action.  (*See* Ex. A—Complaint, Prayer for Relief at 40:24-25, 41:9-10, 42:11-12, and 43:7-8; *see also* ¶¶ 61, 73, 99, and 121.)

94.    Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$2,998,986** in this case, which is 25% of the potential recovery of the First, Fifth, and Seventh Causes of Action—$1,369,869 (unpaid minimum wages claim) + $711,276 (expense reimbursement claim) + $9,914,800 (wage statement claim).

### 8.    The Total Aggregate Amount In Controversy Exceeds $50 Million

95.    Although Defendant denies Plaintiff's allegations that she or the potential class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the potential class for all asserted claims is approximately **$50,633,364**:

[*Chart on following page*]

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2

| Cause of Action ("COA") | Amount in Controversy Based on the Allegations of the Complaint |
|---|---|
| Unpaid Minimum Wages (First COA) | $1,369,869 (five minutes of unpaid minimum wages per employee per week) |
| Meal Period Claim (Third COA) | $8,219,216 (one hour of premium pay per employee per pay period) |
| Rest Period Claim (Fourth COA) | $8,219,216 (one hour of premium pay per employee per pay period) |
| Expense Reimbursement Claim (Fifth COA) | $711,276 ($3 per month per employee for 237,092 months) |
| Wage Statement Claim (Seventh COA) | $9,914,800 (based on 103,423 wage statements) |
| Waiting Time Penalties Claim (Eighth COA) | $19,200,000 (based on 5,000 of the 11,519 employees who were terminated at $16 per hour, eight hours per day, for 30 days) |
| Attorneys' Fees | $2,998,986 (based on 25% of the potential recovery of $11,995,945 for the First, Fifth, and Seventh Causes of Action) |
| **Total** | **$50,633,364** |

96.     Although Defendant denies Plaintiff's allegations that she or the potential class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

97.     Because minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

98.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C.

27

DEFENDANT ULTA'S NOTICE OF REMOVAL

§ 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

**IV.   VENUE**

99.   Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  This action originally was brought in the Superior Court of the State of California for the County of San Bernardino, which is located within the Central District of California.  *See* 28 U.S.C. § 84(c)(1) ("The Central District…. Eastern Division comprises the counties of Riverside and San Bernardino.").  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

**V.   NOTICE TO STATE COURT AND TO PLAINTIFF**

100.   Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California for the County of San Bernardino. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of San Bernardino as required under 28 U.S.C. § 1446(d).

**VI.   PRAYER FOR REMOVAL**

101.   WHEREFORE, Defendant prays that this civil action be removed from Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District of California.

DATED: April 13, 2022                    SEYFARTH SHAW LLP

By: _____
Jon D. Meer
Leo Q. Li
Sofya Perelshteyn
Justin J. Jackson
Attorneys for Defendant
ULTA SALON, COSMETICS &
FRAGRANCE, INC.

DEFENDANT ULTA'S NOTICE OF REMOVAL

81226164v.2